## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

CLARENCE JIM JIMENEZ,

   *Plaintiff*,

         CASE NO. 2:14-cv-13298

         DISTRICT JUDGE PATRICK J. DUGGAN

*v.*           MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

   *Defendant*.

_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

   In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Jimenez's Motion for Summary Judgment (Doc. 13) be **DENIED** and that the Commissioner's Motion for Summary Judgment (Doc. 16) be **GRANTED**.

### II.  REPORT

#### A.  Introduction and Procedural History

   Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act 42 U.S.C. §§ 401-34 and Supplemental Security Income ("SSI") under Title XVI, 42 U.S.C. § 1381 *et seq*. (Doc. 11; Tr. at 19, 30). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 13, 16).

Plaintiff Clarence Jim Jimenez was forty-four years old at the time of the most recent administrative hearing on March 4, 2013, at which time Plaintiff was represented by an attorney. (Transcript, Doc. 11 at 40.) Plaintiff appeared *pro se* at a previous hearing held on September 21, 2012.  Plaintiff worked as a drywaller for five years, a cook for nine years, a framer for one year, a cashier for one year, and a landscaper for two years. (Tr. at 224.) Plaintiff filed the present claims on September 29, 2011. (Tr. at 189-96,) alleging that he became unable to work on November 1, 2009. (Tr. at 189.) The claims were denied at the initial administrative stage. (Tr. at 126.) In denying Plaintiff's claims, the Commissioner found no diagnoses established. (*Id.*) On March 4, 2013, Plaintiff appeared before Administrative Law Judge ("ALJ") Tammy Thames, who considered the application for benefits *de novo*. (Tr. at 35-68.) In a decision dated April 18, 2013, the ALJ found that Plaintiff was not disabled. (Tr. at 16-34.)

On June 23, 204, the ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), when, after review of additional exhibits[1] (Tr. at 258-63), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On December 15, 2014, Plaintiff filed the instant suit, seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

---

[1]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**B.    Standard of Review**

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

**C.    Framework for Disability Determinations**

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can be
> expected to result in death or which has lasted or can be expected to
> last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The

Commissioner's regulations provide that disability is to be determined through the application

of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful
> activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or
> combination of impairments that "significantly limits . . . physical
> or mental ability to do basic work activities," benefits are denied
> without further analysis.

> Step Three:  If the claimant is not performing substantial gainful
> activity, has a severe impairment that is expected to last for at least
> twelve months, and the severe impairment meets or equals one of
> the impairments listed in the regulations, the claimant is
> conclusively presumed to be disabled regardless of age, education
> or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant
> work, benefits are denied without further analysis.

> Step Five:  Even if the claimant is unable to perform his or her past
> relevant work, if other work exists in the national economy that
> plaintiff can perform, in view of his or her age, education, and work
> experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534

(6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and

severity of limitations caused by her impairments and the fact that she is precluded from

performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir.

2003). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007). The burden

4

transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

###### D.    ALJ Findings

Following the five step analysis, the ALJ found Plaintiff was not disabled under the Act. At Step One, the ALJ found that Jimenez met the insured status requirements through June 30, 2009, and that he had not engaged in substantial gainful activity since May 1, 2009, the alleged onset date. (Tr. 21). At Step Two, the ALJ found Plaintiff had the following severe impairments: "left ulnar mononeuropathy of the elbow, tears of the superior, posterior and anterior glenoid labral of the left shoulder, chronic left shoulder pain, and diverticulitis." (*Id.*). Plaintiff was only found eligible to receive Title XVI benefits because he "failed his burden of proof, [under Title II,] to establish a medically determinable impairment prior to his date last insured." (Tr. 21-22). At Step Three the ALJ found that Plaintiff's combination of impairments did not meet or equal one of the listings in the regulations (Tr. at 23).  The ALJ then found that Jimenez had the residual functional capacity ("RFC") to perform sedentary work

> except he can occasionally lift and/or carry up to 10 pounds. He can frequently lift and/or carry up to 10 pounds. He can frequently lift and/or carry less than 10 pounds. The claimant can stand and/or walk (with normal breaks) a total of about two hours during an eight-hour workday. He can sit (with normal breaks) for a total of about six hours during an eight hour workday. The claimant can occasionally push or pull with his bilateral upper extremities. He can occasionally climb ramps or stairs, but never

5

> climb ladders, ropes, or scaffolds. The claimant can frequently balance. He can occasionally stoop, kneel, crouch, and crawl. The claimant should avoid concentrated exposure to hazards such as dangerous moving machinery or unprotected heights. He has the ability to understand, remember, and carry out simple instructions and perform simple tasks."

(Tr. 23-24). At Step Four the ALJ found that Jimenez was unable to perform his past relevant work as a cook, drywall installer, house repairer or cashier. (Tr. 29). At Step Five, the ALJ found that a significant number of jobs existed which Jimenez could perform despite his limitations. (*Id.*).The ALJ also found that Plaintiff was 40 and therefore a younger individual (age 18-44) as of the alleged onset date. (*Id*). As a result, the ALJ found Jimenez is not disabled under the Act. (Tr. 30).

### E.    Administrative Record

### 1.    Medical Records

With regard to physical issues, Plaintiff was treated from 2009 through 2012 at the Bay Regional Medical Center (Tr. at 264-93), by Brent Maze, P.A.C. at the Bayside Health Center (Tr. at 294-357), and by Bryon Chamberlain, MD at Bayside Community Health Center (Tr. at 258-70). Jimenez was most frequently treated for shoulder, knee, and elbow pain as well as abdominal cramping (diverticulosis). (Tr. 268, 273, 283).

On November 14, 2009, Jimenez was treated in an emergency room for abdominal pain. (Tr. 281). A Computed tomography (CT) scan of the abdomen and pelvis found "some small bowel wall thickening and duodenal wall thickening, maybe represent[ing] duodenitis and/or ileitis." (Tr. 291, 325). Jimenez was assessed with abdominal pain and rule out "mild" diverticulosis. (Tr. 282). On February 2, 2010 during a follow up visit with Maze, Plaintiff

complained of headaches and nausea. (Tr. 311). During an examination, Maze noted that Plaintiff's abdomen was "soft, non-tender." (*Id.*) On April 2, 2010, Plaintiff was seen for lower quadrant abdominal pain and rectal bleeding similar to the symptoms Jimenez experienced in November. (Tr. 309).

On June 22, 2010, Plaintiff complained of hand pain he had experienced for one and a half years and shoulder and knee pain he had experienced for "years."(Tr. 308). Maze assessed the claimant with "chronic" left shoulder and left knee pains and prescribed him Tramadol. (*Id.*) On June 23, 2010, X-rays of Plaintiff's left knee and left shoulder were negative, revealing "no bony or any articular abnormality." (Tr. 279-80). On July 10, 2010 Jimenez reported that the medication and a wrist splint were "working well" and that his pain was "30 percent better." (Tr. 25). On August 17, 2010, a nerve conduction study (EMG) found a "mild, left ulnar mononeuropathy across the elbow segment, characterized by a partial conduction block and conduction slowing without ongoing denervation." (Tr. 278, 324).

On November 2, 2010, a MRI scan of Jimenez's left knee indicated a "small medial meniscal tear, small joint effusion" and "questionably abnormal appearance of the anterior cruciate ligament which may reflect [a] previous partial thickness tear." (Tr. 273). On November 9, 2010, a MRI of Jimenez's left shoulder indicated "tears of the superior, posterior superior, and anterior glenoid labrum." (Tr 268).

On November 19, 2010, it was noted that Plaintiff "denies anymore diarrhea or abd[omen] pain," and that he did not have a colonoscopy yet because Jimenez reported that he hadn't had the time. (Tr. 304).

On January 5, 2011, during a pre-surgical visit for his left shoulder, Plaintiff reported pain in his left knee and right hand, chronic pain in his left shoulder, and denied abdominal pain (Tr. 300, 340). Plaintiff indicated that he had a colonoscopy scheduled for February. (*Id.*) Upon examination, Maze noted that Jimenez demonstrated full active range of motion in his left shoulder but complained of "tenderness past 90 degrees with flexion and abduction and with [internal rotation]." (Tr. at 302). Maze assessed Plaintiff with chronic left shoulder pain and cleared him for surgery. (*Id.*)

On April 19, 2011 Plaintiff had "left shoulder Bankart repair and capsular shift procedures." (Tr 332). On May 23, 2011, during a visit for a "recheck of his left shoulder," with Dr. Chamberlain, Plaintiff complained of pain in his left shoulder that "radiate[s] into the upper arm." (*Id.*) He stated that the pain gets worse after stretching at therapy and that he wears his brace "at all times." (*Id.*) During a second evaluation on April 19, 2011, Plaintiff reported that physical therapy was helping and that he was "making progress." (Tr. 333). He complained of pain in his elbow and upper shoulder at night and after his physical therapy, but stated that his medication does help. (*Id.*) Dr. Chamberlain explained that Plaintiff's shoulder was "still pretty stiff" but that it was to be expected. (*Id.*) On October 13, 2011, Plaintiff reported that he finished his physical therapy and that he does not have pain with rest. (Tr. 334) Upon examination of the left shoulder, Dr. Chamberlain noted that Plaintiff had forward flexion to 90 degrees and 20 degrees of external rotation.'" (*Id.*). Dr. Chamberlain recommended that Plaintiff continue physical therapy.

On November 23, 2011, Plaintiff reported that he had not completed the recommended colonoscopy and he "[n]o longer has lower abd[ominal] pains." (Tr. 347).P.A. Maze continued

8

to recommend a colonoscopy and provided another referral. (Tr. 350). On January 27, 2012, Jimenez complained that he was "[h]aving aches and pains 'all over [his] shoulder,'" and experiencing intermittent pain in his left hand with use. (Tr. 351. 367). Plaintiff reported that he had stopped using Tramadol because it was ineffective with his left shoulder pain and that he "[w]ould like stronger med[idcation]." (Tr. 351, 367). Maze diagnosed plaintiff with Chronic left shoulder pain and prescribed Mobic. (Tr. 353).

On July 6, 2012, Jimenez reported to P.A. Maze that he "[n]ever did [follow up] with Dr. Chamberlain" and that he left his last appointment early because he had to "wait too long." (Tr. 362). Jimenez continued to complain of pain in his left shoulder and limited range of motion, and stated that his symptoms were no longer improving despite the physical therapy exercises he completed at home. (Tr. 362). Maze noted, that Plaintiff denied any black stools but had diarrhea after eating red meat or dairy intermittently. (*Id.*) Plaintiff also stated that he never had a colonoscopy and refused to have one at this time "secondary to cost." (*Id.*) Upon examination, Maze noted no swelling or redness in Jimenez's left shoulder. And that he demonstrated "120 active shoulder flexion and 100 active shoulder abduction with [complaint of] tenderness past 90 degrees." (Tr. 364).

With regard to mental health issues, Plaintiff received treatment from Brent Maze, P.A. and Kay McLaren, N.P. from November 2011 through November 2012 (Tr. 347, 351, 362, 380, ).On November 23, 2011, Plaintiff reported that he thought he was depressed, that he experienced "sadness off and on and decreased motivation[,]" and that he wakes up a lot at night." (Tr. 347). Maze assessed Plaintiff with depression and provided him with counseling information. (Tr. at 349). In a mental status examination no depression, anxiety, or agitation

9

was noted. (*Id.*) On January 27, 2012, Jimenez stated that his mood was the "same" and complained that he was "[c]rying for no reason and tired [throughout the] day." (Tr. 351, 367). Jimenez explained that he had an appointment scheduled with the Michigan Psychiatric Associates the following week. (*Id.*). Plaintiff was prescribed Cymbalta due to interference with his sleep from his other medication. (Tr. at 353). During a mental status examination there was again no depression, anxiety, or agitation noted. (*Id.*).

On February 22, 2012, during Jimenez's first visit with Nurse Practitioner McLaren she diagnosed him with recurrent, unspecified major depressive disorder, bipolar disorder not otherwise specified, cannabis dependence and alcohol abuse. (Tr. 380). In her psychiatric evaluation McLaren alleged that "[h]is mood is very depressed. He is sad looking[,] becomes tearful when talking about his struggles. Feels very worthless not being able to provide for his family. Has a lot of irritability, moodiness, difficulty sleeping, poor appetite, low motivation. Suffers from chronic pain issues which limit his mobility."  She also noted Jimenez's focus and concentration as fair and that he has insight into his depression and is motivated to get better." (*Id.*) Plaintiff medication was changed to Paxil. (*Id.*).

It was consistently noted in Nurse McLaren's notes that Jimenez was "alert and oriented" and "neatly dressed." (Tr. at 372, 374, 376, 377, 380) On March 21, 2012, Plaintiff reported that "he [felt] his depression [was] somewhat better" and he felt more energy and slept better. (Tr. 377) McLaren noted that chronic pain and financial problems were an ongoing concern. (*Id.*). On May 16, 2012, Plaintiff reported that his "mood [was] depressed and [he was] not sleeping well." (Tr. 376). McLaren noted that he "vented about [his] relationship with his mother," informing McLaren of an argument that ended when he asked his mother to move

10

out and "put his fist through the wall in anger." (*Id.*). McLaren assessed plaintiff with recurrent, unspecified, major depressive disorder, cannabis dependence, alcohol abuse, and bipolar disorder not otherwise specified, and increased his medication. (*Id.*). On June 21, 2012, Jimenez reported that his "moods [were] good" and "he [was] not losing his temper like he was and [felt less] irritability." (Tr. 374). Again he "vented about [his] relationship with [his] mother" but McLaren noted that he was calm and felt things were "much better since [his mother] moved out of their household." (*Id.*).

On July 6, 2012 P.A. Maze noted that Plaintiff was "agreeable" to his new psychiatric medications and it was helping with his mood." (Tr. 362). He assessed Plaintiff with improved depression, and during a mental status examination once again noted no signs of depression, anxiety, or agitation. (Tr. 365). On November 14, 2012, Nurse McLaren noted that plaintiff's mood was depressed and his affect constricted. (Tr. 372). Jimenez reported that he missed an appointment and ran out of medication three weeks prior. (*Id.*). He stated that he was "getting angry more easily without his medication[, but felt] he [would] be okay if he gets back on his meds." (*Id.*).

Nurse McLaren completed a medical source statement outlining the current limitations of Plaintiff's diagnosed major depression on November 6, 2012. (Tr. 371). McLaren checked off moderate limitation with regard to Plaintiff's ability to "understand, remember, and carry out an extensive variety of technical and/or complex instructions, to "maintain concentration and attention for at least two hour increments," and to "withstand stress and pressures associated with an eight-hour work day and day-to-day work activity." (*Id.*) McLaren checked off that Plaintiff was not significantly limited or any limitation was unknown with regard to

11

Plaintiffs ability to "relate and interact with supervisors and co-workers," to understand and carry out simple one-or-two step job instructions, to "deal with the public, and to "handle funds." (*Id.*) No further comment or explanation was provided regarding these limitations. (*Id.*).

### 2.    Function Report

On October 11, 2011, Plaintiff completed a function report describing how his illnesses, injuries, or conditions limit his activities. (Tr. 233-43). Jimenez reported that he lives with his wife, kids and grandson (Tr. 236). He reported that his ability to work is limited because he has to be near a bathroom and cannot leave his home until "about 11-12," he has lots of pain from hernia surgery, and has been off work since his shoulder surgery in April 2011. (*Id.*) On an average day, Plaintiff said that he is "in and out of the bathroom til about 11-12 while trying to get [his] kids to school [and] drop of [his] wife." (Tr. 237). Jimenez reported that he can complete personal care tasks although he reported limitations based on pain. (*Id.*) He also reported that he cooks "complete meals with several courses" daily and picks up small things around the house. (Tr. 238). He goes outs multiple times a day, drives a car and is able to shop and pay bills. (Tr. 239). He spends time with family, but reported that he does not like "being around a lot of people." (Tr. 240-41). He can lift up to 10 pounds and reported difficulty bending over, getting along with others, walking, sitting, kneeling, standing, reaching, bending, squatting, using, hands, and completing tasks. (Tr. 241) He reported that he never had difficulty following instructions, he can pay attention for 34-45 minutes, that he is "very good under pressure" and that he does not handle changes to his routine well. (*Id* 241-42*.*)

## 2.      Vocational Expert

Carrie Anderson testified as a vocational expert ("VE") at Jimenez's hearing before the

ALJ on March 2, 2013. (Tr. 36-37). The ALJ provided Anderson with the following

hypothetical individual:

> [C]onsider a hypothetical individual of the claimant's age, education, and past
> work experience with the following limitations -- occasionally lift and/or carry 10
> pounds, frequently lift and/or carry less than 10 pounds; stand and/or walk with
> normal breaks a total of two hours in an eight-hour workday; sit with normal
> breaks, a total of about six hours in an eight-hour workday; ability to perform
> pushing and/or pulling activities, with the bilateral upper extremities, is limited to
> an occasional basis; occasionally perform climbing of ramps or stairs; never
> climbing ladders, ropes or scaffolds; frequently perform balancing., occasionally
> perform stooping, kneeling, crouching or crawling; avoiding concentrated
> exposure to hazards such as dangerous machinery and unprotected heights; having
> the ability to understand, remember and carry out simple instructions, and perform
> simple tasks.

(Tr. 63-64)

In response to this hypothetical, the VE found that such an individual would not be able

to perform Plaintiff's past relevant work, but would be able to perform sedentary work.

Specifically, Anderson said the claimant would be able to work as a surveillance monitor,

which has a regional number of 1800 jobs and national number of 74,400 jobs; a paper inserter,

which has a regional number of 1700 jobs and national number of 80,200 jobs; and a clerk

processor, which has a regional number of 1900 jobs and national number of 215,000 jobs. (Tr.

63-64). Anderson further testified that her testimony was consistent with the descriptions and

definitions provided in the Dictionary of Occupational Titles ("DOT").

13

F.      Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2. Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* at *2. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her residual functional capacity. *Id.* at 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the

14

treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). *See also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-3p, 2006 WL 2329939, at *2.

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). *See also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2). *See also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec. of Health & Human Servs*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273, 1995 WL 138930, at *1 (6th Cir. 1995) (unpublished table decision).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

16

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quotation omitted), a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)   [D]aily activities;

(ii)   The location, duration, frequency, and intensity of . . . pain;

(iii)   Precipitating and aggravating factors;

(iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)   Treatment, other than medication, . . . received for relief of . . . pain;

(vi)   Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *See also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the

Secretary may require." 42 U.S.C. § 423(d)(5)(A). *See also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.    Analysis

Jimenez contends that the ALJ's hypothetical and RFC determination were not supported by substantial evidence because the ALJ (1) failed to discuss and identify all of plaintiff's severe impairments; (2) failed to account for all of plaintiff's limitations; and (3) relied on erroneous vocational expert testimony. (Doc. 13). As discussed above, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this court would have decided the matter differently and even where substantial evidence supports the opposite conclusion *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Thus the Court will address each of Plaintiff's arguments in turn.

### 1.    Step Two Analysis

Plaintiff appears to assert that the ALJ erred by failing to find that his depression and degenerative joint disease of the knee were severe impairments at Step Two, and by failing to explain why the knee impairment was not found severe. (Doc. 13 at ID 439-40). However, once the Step Two list of severe impairments is "cleared" by a finding that a severe impairment exists, the ALJ must only consider a plaintiff's "severe and nonsevere impairments in the remaining steps of the sequential analysis." *Anthony v. Astrue*, 266 Fed. Appx.451, 457 (6th

18

2008); *see also Pompa v. Comm'r of Soc. Sec.*, 73 Fed. Appx. 801 (6th Cir. 2003). "The fact that some of [the plaintiff's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Id.* Consequently, I suggest that any alleged omission from the list of severe impairments does not undermine the ALJ's decision. As to the RFC analysis, the ALJ expressly stated that he considered all of Plaintiff's symptoms, and discussed in detail plaintiff's medical history regarding both his knee impairment and his diagnosis of bipolar and major depressive disorder. (*See* Tr. at 24-28); *Kornecky v. Comm'r of Soc. Sec.*, 167 F.App'x 496, 508 (6th Cir. 2006). Therefore, I suggest that the ALJ committed no error in Step Two.

### 2.     RFC Determination

Plaintiff asserts that the ALJ's RFC determination is "inconsistent with the evidence of record" because it does not "accommodate for stress . . . [or] include any limitations pertaining to stress." (Doc. 13, at ID 437). Specifically, Plaintiff complains that the ALJ erred by assigning "little weight" to McLaren's opinion that Jimenez is "moderately limited in his 'ability to withstand the stress and pressures associated with an eight-hour work day and day-to-day work activity.'" (*Id.* at 437-38) The ALJ found that McLaren's opinion was "inconsistent with the claimant's mental health treatment history, which demonstrated improving depression that was relatively well treated through medication." (Tr. 27). However, Plaintiff argues that the record actually reflects "a lot of tension in the household and Mr. Jimenez was unable to deal with the stress and pressure of that situation, as well as the chronic pain and feeling 'very worthless not being able to provide for his family.'" (*Id.* at 439).

Plaintiff's argument that the ALJ erred by giving McLaren's opinion "little weight" fails because, as a nurse practitioner, McLaren is not a treating source. 20 C.F.R. § 404.1513(d)

19

("Other sources include, but are not limited to . . . nurse practitioners[.]"); SSR 06-3p, 2006 WL 2329939, at *2 ("[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight."). The ALJ properly found that McLaren is not an acceptable medical source at all, and therefore her statements are not medical opinions. 20 C.F.R. §§ 404.1502, 416.902; (Tr. 26). Thus the ALJ *may* use them as evidence of the impairments' severity but the ALJ is not required to give them any particular weight. *See* 20 C.F.R. § 404.1513(d) ("In addition to evidence from the acceptable medical sources . . . we *may* also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work." (emphasis added)) "[A]n ALJ has discretion to determine the proper weight to accord opinions from "other sources" such as nurse practitioners." *Cruse*, 502 F.3d at 540; *see also Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2009) (finding that an ALJ may discount testimony from nurse practitioners if germane reasons are provided).

The ALJ properly determined the probative value of McLaren's opinion, as an "other source" under the six factor balancing test laid out in 20 C.F.R. § 404.1527(c). The ALJ stated that she had "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Tr. at 24). "[T]here is no per se rule that requires an ALJ to articulate each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c)." *Schanck v. Comm'r of Soc. Sec.*, No. 12-14837, 2014 U.S. Dist. LEXIS 46584, 2012 WL 1304816 at *5 (E.D. Mich. Mar. 31, 2014).

The ALJ accorded little weight to McLaren's opinion because she found that it was "inconsistent with the claimant's mental health treatment history, which demonstrated

improving depression that was relatively well treated through medication." In support of this finding the ALJ discussed several examinations noting Plaintiff's mental status as "no depression, anxiety or agitation" (Tr. 25-37, 302, 349, 353, 365), noting Plaintiff reported better moods and response to his medication, (Tr. 27, 374, 377), assessing plaintiff with "improved depression" (Tr. 27); and noting that Jimenez was stressed out after three weeks without medication, but stated he would be "okay" if got back on his medication (Tr. 27, 372). The ALJ also looked to Plaintiff's October 2011 Function Report, finding that the daily activities described only demonstrated "mild limitation" in his activities of daily living; social functioning; and concentration, persistence, or pace. The ALJ noted that "on a typical day [Jimenez] gets his children to school and does shoulder workouts," and that Plaintiff "could prepare complete meals with several courses, pick up things around the house, go outside on a daily basis, drive a car, shop, and handle money." (Tr. 22). She noted that any difficulties with personal care activities appear "rooted to pain" and also found no evidence of decompensation. (Tr. 22-23).

To support his argument, Plaintiff points to his consistent diagnosis with bipolar and major depressive disorder since February 2012, and alleges that the ALJ erred by relying on the October 2011 Function Report because it was completed prior to Jimenez's diagnosis. (Doc. 13, at ID 439). A "mere diagnosis…of course, says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). In addition, as discussed above, under 20 C.F.R. § 404.1513 there is no requirement that an ALJ do anything more than consider evidence from other sources, and the ALJ provided good reasons for the weight that she gave McLaren's opinion. With regard to the function report, Plaintiff first reported

21

symptoms of depression in November 2011; thus the ALJ, did not err by relying on a self-completed report filled out a mere month prior to Plaintiff's first reported symptoms. The ALJ is in fact required to "consider all evidence" when making a disability decision. 42 U.S.C. § 423(d)(5)(B).

Even with the limited weight assigned to McLaren's opinion, the RFC is largely consistent with McLaren's assessment. As Defendant points out, the ALJ specifically accounted for stress by limiting Plaintiff to the "ability to understand, remember and carry out *simple* instructions and perform *simple* tasks. (Tr. 24 (emphasis added)). Thus I suggest that the ALJ did not err by failing to include McLaren's opinion in her RFC assessment.

Plaintiff next contends that the ALJ erred by finding that plaintiff "was not fully credible" due to his failure to follow-up on recommendations because plaintiff's testimony established that lack of insurance and high deductibles made Jimenez unable to comply. (Doc. 13, at ID 440); (Tr. 28). Jimenez testified that in 2011, he had insurance, but he had "to pay a $968 deductible [] to be seen," and that he could not get assistance with it. (Tr. 42-43). He also testified that when he attempted to get a colonoscopy they would not see him because his insurance was cancelled. (Tr. 56).

However, "it is well-established that an ALJ may discount such testimony and such credibility determinations are entitled to great weight." *Locket v. Comm'r of Soc. Sec.*, 2012 U.S. dist. LEXIS 122877, 2012 WL 3759037 (E.D. Mich. Aug. 1, 2012); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Furthermore, the ability to afford treatment is just one of a variety of factors an ALJ considers in determining the claimant's credibility. *Id.*

22

In the instant case, the ALJ did not address Plaintiff's lack of insurance coverage, but considered the daily activities described by Plaintiff and Plaintiff's compliance with and response to prescribed medications. (Tr. 28). Moreover, as Defendant points out, the ALJ's mention of Jimenez's failure to follow up on treatment "was unrelated to lack of insurance coverage." (Doc. 16, at ID 463). The ALJ specifically referenced an instance in November 2011 where plaintiff refused a colonoscopy because he no longer had lower abdominal pain, (Tr. 28, 347) and an instance in July 2012, where Plaintiff did not follow through on a specialist appointment because the wait was too long. (*Id.*) Therefore, I suggest that the ALJ did not err in her RFC assessment and it is supported by substantial evidence.

### 3.    Vocational Expert Testimony

Plaintiff contends that the ALJ's decision was not supported by substantial evidence because the ALJ relied on erroneous VE testimony at Step Five. (Doc. 13 at ID 9). The VE testified that a hypothetical individual with plaintiff's impairments could perform sedentary work as a surveillance monitor, paper inserter, or a clerk processor. (Tr. at 64-65). The VE also testified that her testimony was consistent with the descriptions and definitions proved by the DOT. (*Id.* at 66). However, according to the DOT paper inserter has a strength level of light, and "[p]hysical demand requirements are in excess of those for Sedentary Work." (Doc. 13 at ID 435); (DOT # 794.687-058, *available at* 1991 WL 681328). Thus Plaintiff contends that the ALJ erred by relying on the VE's testimony because it was "incompatible with the hypothetical offered by the ALJ." (Doc. 13 at ID 435).

However, I suggest that this is harmless error because the ALJ met her Step Five burden by relying on the VE's testimony that there are a total of 3700 clerk processor and surveillance

monitor positions available in Michigan. Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered 'work which exists in the national economy.' 20 C.F.R. § 404.1566(b). The Sixth Circuit has not set a specific number for what constitutes a "significant number" of jobs. *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). However, in *Born v. Secretary of Health & Human Services*, the Sixth Circuit found that 2500 jobs will meet the burden. 923 F.2d 1168, 1174 (6th Cir. 1990). Thus I suggest that the ALJ did not err at Step Five by relying on the VE's testimony.

Plaintiff also attacks the VE testimony relied on by the ALJ because the hypothetical the ALJ posed did not accommodate for stress or include any limitations based on stress. (Doc. 13 at ID 436-37). However, it is well settled that an ALJ is only required to incorporate limitations the ALJ has accepted as credible in his hypothetical. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see Stanley v. Sec'y. of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals . . . .); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1002-03 (6th Cir. 1988) (holding that a hypothetical question need not include a limitation that is not supported by "objective medical evidence). As discussed above the ALJ found that McLaren's opinion regarding Plaintiff's ability to deal with stress was "inconsistent with Plaintiff's mental

24

health treatment history." Accordingly the ALJ was not obligated to include any limitations pertaining to stress in her hypothetical.

### G.     Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Jimenez's Motion for Summary Judgment (Doc. 13) be **DENIED**, the Commissioner's Motion (Doc. 16) be **GRANTED**, and that this case be **AFFIRMED**.

## III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it

pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  September 1, 2015                           S/ PATRICIA T. MORRIS
                                                   Patricia T. Morris
                                                   United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: September 1, 2015                       By s/Kristen Krawczyk
                                               Case Manager to Magistrate Judge Morris